JANUARY TERM, 1883, No. 249.                    MARCH 28, 1883.

## Seidel *v.* Bauer.

A conveyancer employed to have a conveyance made clear of incum-
brance and instructed to take out new searches had a mortgage search
against Jonathan Weber, the name of the grantor as it appeared in the
deed to him, brought down to cover the date of the conveyance.   In
executing the conveyance, the grantor signed his full and correct name
" Jonathan D. Weeber."   The conveyancer then took an affidavit from
the grantor that there was no other incumbrance than was on the
searches.   It subsequently appeared that a mortgage had been given
by Jonathan D. Weeber, which the searches did not disclose, and the
grantee was compelled to pay it to prevent the property from being
sold by the sheriff.   *Held,* in an action by the grantee against the
administrator of the conveyancer, that the latter had not properly dis-
charged the obligation he had assumed and that his estate was liable
for the amount of the mortgage.

Before MERCUR, C. J. ; GORDON, PAXSON, TRUNKEY,
GREEN, and CLARK, JJ.

[Seidel *v.* Bauer.]

Error to the Court of Common Pleas, No. 1, of *Philadelphia County.*

*Assumpsit* by John Bauer against Aloisa Seidel, executrix of the last will and testament of Gustavus Seidel, deceased.

The *narr* alleged an employment of defendant's testator, a conveyancer, to cause certain premises to be conveyed by Jonathan D. Weeber to the plaintiff, clear of incumbrances; that, when conveyed to plaintiff, the premises were subject to a certain mortgage debt given by said Weeber and the plaintiff was afterwards compelled to pay $1,109 17 to prevent them from being sold by the sheriff.

On the trial, before BIDDLE, J., the following facts appeared: Jonathan D. Weeber was the owner of certain real estate. In the deed conveying it to him, his name was written "Jonathan Weber." As Jonathan Weber, he was awarded a loan by The Harmony Building and Loan Association, to be secured by mortgage of said property. Gustavus Seidel, defendant's testator, who was the association's conveyancer, was engaged, in their behalf, in drawing the necessary papers, obtaining searches, &c. He was visited by Weeber, who brought with him John Bauer, the plaintiff. Bauer stated that he had agreed to purchase the property from Weeber and would assume the mortgage to the association.

*Paul F. Zaiss,* one of plaintiff's witnesses, testified: "Mr. Bauer told Seidel to take out all new searches, and make a good deed." Seidel said, "All right, Bauer, I will attend to it." Mr. Bauer said, when he went in, "to take out new searches." He told Seidel that he had bought a house from Mr. Weber, and to take out all new searches. Seidel had a mortgage search ordered by Krumbhaar against Jonathan Weber December 15, 1874, brought down to January 4, 1875, in the same name. The deed was drawn from Jonathan Weber to John Bauer. When the deed was presented for execution, it was signed and acknowledged as "Jonathan D. Weeber." The same witness whose testimony is quoted above testified that Bauer asked Seidel "if he had taken out all new searches and if everything was all right." Seidel said: "It is everything right, and if it's not right, I'm good for it." The notary who took Weeber's acknowledgment testified to having noticed the difference between the signature and the grantor's name, as written in the deed, and to referring the matter to Seidel. He continued: "Seidel and Bauer had a talk in German—what

[Seidel *v.* Bauer.]

the conversation was, I don't know. After some time, Mr. Seidel ordered me to take Weber's affidavit, that there was no other incumbrance than was on the searches. Bauer was present. Weber took the affidavit. I don't know what became of it. I prepared it, and swore Weber.

When Weber signed his name, I advised taking out new searches against Jonathan D. Weeber, as the judgments or mortgages would not otherwise appear.

There were no separate searches. There had been searches made against Jonathan Weber, and they were 'brought up.' Don't know who made them. Was present at settlement."

*Gustavus Seidel*, the testator's son, being called by defendant, gave the following account of the same interview:

"Father told Bauer that we would have to take out other searches. Mr. Weber said his right name was 'Jonathan David Weeber,' but that in this country he never made use of it. He did all his business transactions in plain Jonathan Weber. Mr. Bauer asked what the expense for new searches would be, and was told eight or ten dollars—maybe more. So he considered awhile, and said, 'Never mind, I know Mr. Weber a good many years, and know his business very near as well as I do my own.' The settlement was then made. He also said, 'I am satisfied that there is nothing against it. I have lived in the house a good many years.' He said he would take the property without any expense for new searches."

The conveyancer's bill, amounting to $45, and including $7 50 for searches, was paid by Bauer and the deed delivered to him. It was afterwards discovered that, at the time of the conveyance to Bauer, the premises so conveyed were incumbered by a mortgage, executed some time before by " Jonathan D. Weeber," and so indexed in the recorder's office. This mortgage did not appear upon the search taken out by Seidel against " Jonathan Weber." Proceedings were begun by the holder of the mortgage to compel its payment, and Bauer, in order to prevent the property being sold by the sheriff, was eventually forced to pay him $1,109 17, the sum to recover which this suit was brought.

Plaintiff's counsel presented, *inter alia*, the following point:

If the jury believe, from the evidence, that Gustavus Seidel, defendant's testator, as a conveyancer, was employed by the plaintiff to ascertain the title of Jonathan

[Seidel v. Bauer.]

D. Weeber to the premises in question; to prepare a proper deed of conveyance, and procure the necessary searches that would convey a sufficient title to the plaintiff clear of all incumbrances, then it became his duty to have procured from the office of the recorder of deeds, a certificate of search for all mortgages upon said premises executed by said Jonathan D. Weeber, and if, by failure to procure such certificate of search, the plaintiff has sustained any damage, the defendant will be liable in this action for the damage which the plaintiff has sustained.

Affirmed.

(Seventh assignment of error.)

The defendant presented, *inter alia*, the following points:

*Sixth.* That it was the duty of the recorder of deeds, on an order for a certified mortgage search against Jonathan Weber, to certify all mortgages of the premises mentioned in the *narr* by every Jonathan Weber, as well with a middle letter or name as without.

The learned judge answered: "It was not the duty of the recorder, when searches were ordered against Jonathan Weber, to certify as to Jonathan D. Weeber."

(Twelfth assignment of error.)

*Ninth.* If the jury find that defendant's testator ordered or obtained a properly certified mortgage search against the premises in question, for the proper period, against Jonathan Weber, and that was the name by which the said premises were conveyed to him, and that the said Jonathan Weber signed his name Jonathan D. Weeber to the deed from him to the plaintiff, and that thereupon the defendant's testator gave to the plaintiff his opinion, honestly and in good faith, that the search was sufficient, and that the premises were free and clear of mortgage incumbrances, other than those mentioned in the search, defendant's testator is not liable, though mistaken, and your verdict must be for the defendant.

Refused.

(Fifteenth assignment of error.)

The Court charged the judge as follows:

"Whether the defendant should pay to the plaintiff the loss he sustained, depends mainly upon what occurred at the settlement.

There were three witnesses, two for the plaintiff and one for the defendant: Zais, Norton, and Seidel. (The learned judge then read the testimony of these witnesses, as given above, as to what occurred at the settlement).

[Seidel *v.* Bauer.]

These are pretty much all the material facts testified to by these witnesses.

[There is no doubt, in point of law, that if Mr. Seidel became aware of the fact that the real name of Jonathan Weber was Jonathan D. Weeber, and did not take out searches against the real name, or mention the fact to Mr. Bauer, he would be liable.] (Sixth assignment of error). But if Mr. Bauer was made acquainted with the fact, and assumed the risk of it, Mr. Seidel would not be liable."

Verdict for plaintiff for $1,468 64 and judgment thereon; whereupon the defendant took this writ, assigning for error (*inter alia*) the affirmance of plaintiff's point, (*supra,*) the refusal of defendant's points, and the portion of the judge's charge inclosed within brackets.

*J. P. Klinges* and *Joseph W. Hunsicker* for plaintiff in error.

If Seidel made a mistake in not ordering searches against "Jonathan D. Weeber," he at least did so honorably and in good faith. That being the case, he is not liable.

Watson *v.* Muirhead, 7 P. F. Smith, 161; Pitt *v.* Yalden, 4 Burr, 2060; Montriow *v.* Jefferys, 2 C. and P., 113; Godefroy *v.* Dalton, 6 Bing., 460; Kemp *v.* Burt, 4 B. and Ad., 424; Gilbert *v.* Williams, 8 Mass., 51.

*Joseph L. Tull* for defendant in error.

It was for the jury to say whether Mr. Seidel failed to use the proper means to discover the Price mortgage. It is an unheard-of practice that a conveyancer has acted in good faith by simply going to the grantor and getting him to make an affidavit that there are no incumbrances against the premises to be conveyed. In support of so novel a practice, why did not the defendant below call experts to show that this was a proper way for a conveyancer to act, and not complain of us because none were examined in support of our case? It did not require evidence of conveyancers to show what was incumbent for Seidel to do. He recognizes that he was bound to take notice of the difference in the names, and acted, he says, upon it by getting the affidavit of Weeber. That would not be enough, because it did not protect us against the mortgage which a properly directed search would have revealed.

For another reason the specifications cannot be sustained. Bauer gave Seidel positive instructions to have

[Ulmer *v.* Gentner.]

new searches taken out against Weeber. Seidel decided not to do this, but to rely upon his opinion that the old mortgage search was sufficient. He took the risk, and nothing can be plainer than if his neglect to obey the directions resulted in a loss, he is responsible: Gilbert *v.* Williams, 8 Mass., 51.

APRIL 19, 1883.—PER CURIAM: We discover no error in the admission or in the rejection of evidence. It was properly restricted to the transaction between the parties. The plaintiff's testator was bound to exercise reasonable care in the discharge of his professional duty. He was employed not only to prepare a proper deed of conveyance from Jonathan D. Weeber, of the premises in question, but also to procure the necessary searches whereby the deed would convey to the defendant in error a title clear of all incumbrances. Procuring a certificate of search of mortgage against Jonathan Weber only was not a due and proper discharge of the obligation which he assumed. The evidence that he did agree to perform the services stated, and failed to duly perform them, was most ample to submit to the jury, and justifies the verdict.

Judgment affirmed.